IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA R., | |
| Claimant, | |
| v. | No. 21 C 2068 |
| MARTIN O'MALLEY, | Magistrate Judge Jeffrey T. Gilbert |
| Commissioner of Social Security, | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Linda R.[1] ("Claimant") seeks review of the final decision of Respondent Martin O'Malley,[2] Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8]. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c). Claimant filed a Memorandum in Support of Summary Remand [ECF No. 16], and the Commissioner filed a Motion and Memorandum in Support of Motion for Summary Judgment [ECF No. 21, 22].

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

For the reasons discussed below, Claimant's Memorandum in Support of Summary Remand [ECF No. 16] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 21] is denied. This case is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

## PROCEDURAL HISTORY

On May 22, 2017, Claimant filed an application for disability insurance benefits, alleging a disability beginning September 9, 2016. (R.20). The claim was denied initially and on reconsideration. (R.20). Claimant requested a hearing before an administrative law judge ("ALJ"). ALJ Bernadette Freeman held a hearing on June 26, 2019. (R.20). Claimant was represented by counsel and testified at the hearing. (R.20). Eric Dennison, an impartial vocational expert, also testified at the hearing by telephone. (R.20). ALJ Freeman issued an unfavorable decision on July 31, 2019, finding Claimant not disabled under sections 216(i) and 223(d) of the Social Security Act. (R.20-20).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found Claimant met the insured status requirements of the Social Security Act through December 31, 2021, and had not engaged in substantial gainful activity since September 9, 2016, the alleged onset date of her disability. (R.22). At step two, the ALJ found Claimant had the following severe impairments: spinal stenosis, obesity, and sciatica in right leg. (R.22).

At step three, the ALJ determined Claimant did not have any physical or mental impairment or combination of impairments that met or medically equaled the severity of any listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). The ALJ concluded that the severity of Claimant's impairments, considered singly and in combination, did not meet or medically equal the criteria of any listing. (R.24). In her analysis, the ALJ considered Claimant's mental impairments and the four broad categories of mental functioning set out in the disability regulations for evaluating mental disorders, which are known as the "paragraph B" criteria. Specifically, the ALJ found Claimant had mild limitations in the four areas of mental functioning, including (1) understanding, remembering, or applying information; (2) adapting or managing oneself; (3) interacting with others; and (4) concentrating, persisting, or maintaining pace. (R.72). With mild limitations in all four areas of functioning, the ALJ concluded the paragraph B criteria were not satisfied. (R.24).

The ALJ then found Claimant had the residual functional capacity ("RFC")[3] to perform light work except Claimant "is limited to occasionally climbing stairs/ramps/ladders/ropes/scaffolds; unlimited balance, occasionally kneeling, crouching, stooping, and crawling, frequent overhead reaching with the right upper extremity, frequent bilateral pushing/pulling with the lower extremity; frequent neck flexion; frequent bilateral feeling with the upper extremity, and the claimant will be

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

3

absent once every 2 months for medical appointments." (R.25). At step four, the ALJ found Claimant was capable of performing her past relevant work as a customer service representative as "this work does not require the performance of work-related activities precluded by" Claimant's RFC. (R.29). At step five, relying on testimony from the vocational expert and considering Claimant's age, education, work experience, and RFC, the ALJ also found there are other jobs that exist in significant numbers in the national economy in addition to her past relevant work that Claimant also could perform, including marker, garment sorter, and classifier. (R.30).

For all these reasons, the ALJ concluded Claimant has not been under a disability as defined in the Social Security Act from September 9, 2016, through July 31, 2019, the date the ALJ's decision was issued. (R.20-30). Thereafter, Claimant filed this lawsuit seeking judicial review, and this Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 1383(c).

## STANDARD OF REVIEW

When a claimant files an application for disability insurance benefits, she bears the burden under the Social Security Act to bring forth evidence that shows her impairments are so severe they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *Bowen v. Yuckert*, 482 U.S. 137, 147-48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of

4

> impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 351-52 (7th Cir. 2005); 20 C.F.R. § 416.920)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S. Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the ALJ's decision, the findings

5

will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the ALJ's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

Claimant argues the ALJ's decision cannot stand in this case because: (1) the ALJ's RFC assessment is incomplete and unsupported by substantial evidence; and (2) the ALJ improperly discounted the limiting effects of Claimant's subjective symptoms and complaints. The Court addresses the arguments below.

### I. The ALJ's RFC Is Not Supported by Substantial Evidence

Claimant argues the RFC assessment is incomplete and unsupported because the ALJ improperly relied solely on her own lay impression of later-submitted objective medical evidence when making the RFC determination. The RFC is an assessment of the maximum work-related activities a claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004) (citations

6

omitted). Social Security regulations require that the RFC assessment be "based on all the relevant evidence in the record." *Id.* at 1001, citing 20 CFR §404.1545(a)(1). SSR 96-8p further requires the ALJ to "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)…." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020).

In this case, state agency medical consultants reviewed Claimant's records in September and November 2017, respectively, at the initial and reconsideration stages of the agency's adjudicatory process. (R.68-76,80-90). Since that review, Claimant submitted additional medical evidence, including: (1) a December 2017 MRI of her lumbar spine confirming a disc extrusion and moderate-to-severe foraminal stenosis at the L4-L5 level of her lumbar spine (R.457-58,460); (2) a January 2018 MRI of her cervical spine revealing multilevel bulging discs and disc protrusions that cause central canal stenosis and mild cord flattening (R.492-93); (3) March 2019 x-rays that showed instability at the C3-C4 level of her cervical spine (R.570-71); and (4) physical examinations in May and November 2018 that were "suspicious" for bilateral carpal tunnel syndrome and left cubital tunnel syndrome (R.482, 489). Additional evidence also revealed two failed cervical epidural steroid injections and also included a spinal surgeon's determination that spinal fusion could treat Claimant's cervical instability and lumbar changes, but it likely would not offer much relief for her neck pain.

7

(R.479,488,565-67). This additional evidence was not considered by any medical professional.

Claimant argues the ALJ "played doctor" in this case when concluding, based on her review of the evidence, that the decline in Claimant's spinal condition as evidenced by more recent MRIs did not affect her ability to work. The Court agrees with Claimant. The regulations prohibit an ALJ from "playing doctor and reaching [her] own independent medical conclusion." *Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). An ALJ should not rely on "an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018). Instead of interpreting new evidence on her own, an ALJ should submit new and potentially decisive medical evidence to medical scrutiny. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) ("Fatally, the administrative law judge failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence."). The Court recognizes that an ALJ is not required to obtain an opinion from a medical expert, but the regulations also are clear that "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill,* 896 F.3d 768, 774 (7th Cir. 2018).[4]

---

[4] *See, e.g., Joseph J.L. v. Commissioner of Social Security*, 2022 WL 856811, at *9 (S.D. Ill. Mar. 23, 2022) (holding that "there is no medical opinion in the record that sheds light on the significance of the 2017 MRI ... [g]iven the unknown but potential significance of the 2017 MRI, the ALJ erred in drawing conclusions from the technical medical evidence without relying on a medical expert"); *Annette S. v. Saul*, 2021 WL 1946342, at *8 (N.D. Ill. May 14, 2021) (finding that "evidence postdating the state agency physicians' opinions did change the

8

The Commissioner's argument that the ALJ considered the new evidence and included the appropriate limitations in the RFC is not persuasive. Commissioner's Memorandum [ECF No. 22], at 7. Here, the ALJ discussed the new evidence when she provided a chronology of Claimant's medical history (R.27-28), but there is no medical scrutiny of this new evidence. This is not a situation in which a single piece of new evidence of debatable consequence was not properly considered. There was a plethora of new evidence submitted here spanning more than one year none of which was subjected to any medical review in connection with Claimant's application for benefits. The ALJ relied upon the state medical agency consultant's determination, "[a]fter reviewing the evidence," that Claimant is capable of performing light exertional level work (R.28), but the agency consultant did not see all the relevant evidence. The Commissioner argues the ALJ was not required to obtain a new or updated expert opinion unless the new evidence submitted might cause existing opinions to change (Commissioner's Memorandum [ECF No. 22], at 7), but the ALJ did not explain how or whether she determined the new evidence would not change existing opinions. The ALJ's apparent implicit determination that nothing more was required is insufficient on this record without any explanation.

It is unclear to the Court what impact the new evidence could have on Claimant's ability to engage in sustained full-time work, and the Court does not know how the ALJ could make that determination herself without any medical review. When an ALJ denies benefits, she "must build an accurate and logical bridge from

---

picture of [claimant's] condition to a degree that the ALJ erred ... by evaluating himself the significance of the subsequent evidence").

9

the evidence to her conclusion, and [s]he may not 'play doctor' by using [her] own lay opinions to fill evidentiary gaps in the record." *Holsinger v. Commissioner*, 2018 WL 1556409, at *8 (N.D. Ind. Mar. 29, 2019) (citing *Chase v. Astrue*, 458 Fed.Appx. 553, 556-57 (7th Cir. 2012)); *Ayala v. Berryhill*, 2018 WL 6696548, at *1 (N.D. Ill. Dec. 20, 2018). The ALJ erred here by relying on her own lay opinions to fill the gaps in the evidentiary record concerning the significance of the newly submitted medical records. The ALJ's lay interpretation of the additional evidence can only be characterized as the ALJ "playing doctor" which is not permitted.

The Commissioner argues Claimant failed to show how the new evidence "significantly changed the picture" from the scene presented to the reviewing physicians upon which they based their opinions. Commissioner's Memorandum [ECF No. 22], at 8. From the Court's perspective, that characterization of the relevance of the new evidence is pure conjecture, and the Court does not know how the Commissioner or the ALJ can make that determination. No medical professional evaluated that later submitted evidence to determine if it impacted Claimant's functionality. The Commissioner counters that it is Claimant's burden to show she is functionally limited and that she did not present any medical opinion that she is functionally limited based on this evidence. It is not disputed that evidence of Claimant's limitations is based in large part on Claimant's own testimony, but the Court also does not know if the newer evidence (that no medical professional scrutinized) would support some of those limitations.

In the Court's view, for all these reasons, the ALJ's RFC assessment is incomplete and not supported by substantial evidence. The ALJ erred by relying on her own lay impression of new objective medical evidence and failed to construct a logical bridge between the record evidence and her conclusion. These errors warrant remand.

## II. The ALJ's Analysis of Claimant's Subject Symptoms Is Not Supported by Substantial Evidence

Claimant also argues the ALJ improperly discounted the limiting effects of her subjective symptoms and complaints. When evaluating a claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see also* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ also may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported directly by the medical evidence, the ALJ may not ignore circumstantial evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003). SSR 16-3p, like former SSR 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity,

11

persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at 4.

Claimant testified she has "a lot of pain in [her] wrist and numbness, as well," that "increases [with] a lot of movement and activity" and "repetitive motions." (R.45). Claimant explained that neck pain prevents her from bending and turning or standing or walking for longer than an hour. (R.46-47). Depending on her pain level after standing or walking for that long, Claimant said she would need "anywhere from a couple of hours to a whole day of rest." (R.47). In addition, Claimant testified that using the computer even "for very short periods of times" causes her "a lot of pain just to sit and make those repetitive movements. It causes [her] extreme pain on [the] left side [of her neck] more than anything." (R.52). Claimant said she takes naps during the day as a result of the pain she has in neck and lower back. (R.52).

Notably, the ALJ did not specifically address Claimant's testimony but simply asserted that the "further limitations" she included in the RFC will accommodate Claimant's symptoms. As discussed above, the ALJ found that Claimant has the RFC to perform light work with additional postural and climbing limitations, including frequent overhead reaching with the right upper extremity, frequent bilateral pushing/pulling with the lower extremity, frequent neck flexion, and frequent bilateral feeling with the upper extremity. (R.25). Nothing in the record, however, explains how these restrictions will accommodate Claimant's symptoms and complaints. Nothing in the record touches on Claimant's ability to push and pull with

12

her lower extremities, and the ALJ does not cite any evidence to support her conclusion let alone explain why such a restriction would accommodate Claimant's pain in her lower extremities. (R.28-29, 48).

Similarly, it is not clear how the ALJ's limitation to "frequent" feeling with Claimant's upper extremities addresses Claimant's difficulty with repetitive motion or working at a computer work. (R.28,45,52). The ALJ again cited no evidence to support her conclusion that a restriction to frequent feeling would accommodate the testimony she claimed to credit. The ALJ stated that she was accommodating Claimant's testimony, but clearly the ALJ did not credit all of her testimony. The relevant questions: are what testimony did the ALJ credit and what did she reject when crafting Claimant's RFC? The ALJ's opinion is silent in this regard.

Claimant complained about severe disabling pain in her wrist/hands, neck and back that requires her to stop what she is doing, take breaks and rest. (R.45-47, 52). The Seventh Circuit repeatedly has noted that "pain alone can be disabling," even in the absence of objective test results that evidence a disabling condition. *Stark v. Colvin*, 813 F.3d 684 (7th Cir. 2016); *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). Although the ALJ is not required to accept Claimant's testimony about her pain or any other complaints without question, the ALJ must minimally explain why she did not fully credit Claimant's testimony and how she accommodated the limitations she did credit. The ALJ did not do so here. Without this explanation, the Court cannot trace the ALJ's reasoning as to why she accepted some of Claimant's

13

complaints but not others and which complaints she determined were not supported by the medical evidence and why.

Without a more fulsome discussion, it is impossible for this Court to conclude that the ALJ built an accurate and logical bridge from the evidence to her conclusions. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The Court cannot assume or speculate what the ALJ was thinking. The ALJ must provide a sufficient explanation as to what evidence she considered, how she weighed that evidence, and why she made the findings she made. Again, the ALJ claimed to credit Claimant's testimony, but the additional limitations she purported to include in the RFC to accommodate Claimant's symptoms and complaints do not fully address Claimant's asserted limitations, and it is not clear to the Court what evidence the ALL claimed to credit and what evidence she did not credit.

The Court is mindful of the deference that is owed to an ALJ's decision under the substantial evidence standard and that a reviewing court should not substitute its judgment for that of the ALJ's by reweighing the evidence. Although this standard is generous, it is not entirely uncritical. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In this case, the Court is not persuaded by the Commissioner's arguments and agrees with Claimant that the ALJ's explanation for her decision in this case is legally insufficient. The Court is not reweighing the evidence, but it simply does not sufficiently understand the ALJ's analysis to be able to conclude that her ultimate decision is supported by substantial evidence. This does not mean the Court agrees with Claimant that she is disabled and cannot work within the meaning of the

14

applicable law. Rather, it means that the ALJ did not sufficiently explain her analysis of Claimant's subjective symptoms for the Court to be able to conclude that the ALJ's decision is supported by substantial evidence. Therefore, remand is required for the reasons discussed above.

Finally, the Court emphasizes that it is not expressing any opinion about the decision to be made on remand, but it encourages the ALJ to do what is necessary to build a logical bridge between the evidence in the record and the ALJ's ultimate conclusions, whatever those conclusions may be. See, *e.g., Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions."); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

## CONCLUSION

Accordingly, for all of the reasons set forth above, Claimant's Memorandum in Support of Summary Remand [ECF No. 16] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 21] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 29, 2024